**Johnnie WALL, Plaintiff-Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant-Appellee.**

**No. 82–5260.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1983.

Decided Aug. 16, 1983.

C. Ann Courtney, Washington, D.C., for defendant-appellee.

Paul Grace, Arlington, Va., for plaintiff-appellant.

Before WALLACE and PREGERSON, Circuit Judges, and BURNS,* District Judge.

WALLACE, Circuit Judge:

Wall sued under 42 U.S.C. §§ 1981, 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that he was discharged by National Railroad Passenger Corporation (Amtrak) because of his race. The district judge dismissed the section 1983 claim for lack of jurisdiction because Amtrak did not act under color of state law. The Title VII and section 1981 claims were then tried before the district judge, who decided in favor of Amtrak. Wall appeals the district court's decision on the Title VII and section 1981 claims. We affirm.

I

Wall, a black male, was employed by Amtrak from 1974 to 1978. In July of 1974, he was charged with being rude to passengers on an Amtrak train and with being insubordinate to his supervisor. Pursuant to the disciplinary procedure established by the collective bargaining agreement between Amtrak and the union, Wall was granted a formal investigative hearing, found guilty and discharged. He was later reinstated without backpay. In March of 1976, Wall was charged again with insubordination, found guilty and discharged; again he was reinstated without backpay.

The events which gave rise to the present action occurred in January 1978. Wall became involved in an altercation with his supervisor in which he used profane language and made threatening gestures. Wall was found guilty of insubordination and discharged again. Amtrak once more offered Wall reinstatement without backpay, but he refused the offer and filed the present suit.

During the trial, Wall attempted to prove that other similarly situated white employees had received less severe punishment for misconduct similar to that for which he had most recently been discharged. The district judge found, however, that Wall was not similarly situated because he was a three-time offender while none of the white employees had a prior disciplinary record. He concluded (1) that Wall failed to establish a prima facie case, (2) that even if a prima facie case had been established, Amtrak came forward with a legitimate, nondiscriminatory explanation for its behavior, and (3) that Wall failed to prove that the company's explanation was pretextual or that Amtrak's decision to discharge him was racially motivated.

II

We need not decide whether Wall established a prima facie case, because the matter was fully tried on the merits and the district court decided the ultimate issue of discrimination. *See United States Postal Service v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (*Aikens*). By establishing a prima facie case of disparate treatment under Title VII or section 1981, the plaintiff shifts the burden to the defendant to demonstrate that the plaintiff was discharged for a legitimate, nondiscriminatory reason. *Id.; see Gay v. Wait-*

---

* Honorable James M. Burns, Chief Judge, United States District Court, District of Oregon, sitting by designation.

ers' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 538 (9th Cir.1982).

But when the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)] presumption "drops from the case," and "the factual inquiry proceeds to a new level of specificity."

*Aikens*, 103 S.Ct. at 1482, *quoting Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 & n. 10, 101 S.Ct. 1089, 1094–1095 & n. 10, 67 L.Ed.2d 207 (1981) (footnote and citations omitted). At the close of the evidence, rather than focusing on the prima facie case, the district court should proceed directly to the ultimate factual issue of whether the defendant intentionally discriminated against plaintiff on the basis of race. *Aikens*, 103 S.Ct. at 1482. The district court's findings will be upheld unless clearly erroneous. *Id.;* Fed.R.Civ.P. 52(a).

The district judge found that even assuming a prima facie case, Amtrak successfully rebutted the presumption of discrimination by producing evidence that Wall's discharge was based upon his poor disciplinary record, continuous poor attitude, and conduct during the incident preceding his discharge. The court also found that Wall had failed to demonstrate that Amtrak's explanation was pretextual or that his discharge was based on race. These findings were not clearly erroneous. The three white employees who were not discharged for conduct similar to that for which Wall was discharged had no prior disciplinary records. When warranted by the circumstances, an employer may discipline repeat offenders more severely than first-time offenders. The district court also found that neither of Wall's previous discharges were discriminatory and that Amt-

rak had not been guilty of a pattern of discrimination regarding employee discipline. These findings were not clearly erroneous.

### III

Wall also contends that the district court erred in refusing to grant his demand for a jury trial. Under Federal Rule of Civil Procedure 38(b):

Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

Wall claims that he complied with rule 38(b) by checking the "Jury Demand" box on the civil cover sheet.

Although we have apparently never decided the issue in this circuit, every other court to face the question has concluded that checking the jury demand box on the civil cover sheet is insufficient to meet the requirements of rule 38(b). *Cochran v. Birkel*, 651 F.2d 1219, 1221 n. 4 (6th Cir.1981), *cert. denied*, 454 U.S. 1152, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982); *Omawale v. WBZ*, 610 F.2d 20, 22 (1st Cir.1979); *Biesenkamp v. Atlantic Richfield Co.*, 70 F.R.D. 365, 366 (E.D.Pa.1976); *see also Houston North Hospital Properties v. Telco Leasing, Inc.*, 688 F.2d 408, 410 (5th Cir.1982) (dicta). We agree. The civil docket sheet is an administrative document designed to facilitate the court's management of a trial and is not served on the opposing party. Thus, it cannot substitute for proper service under rule 38(b). Since Wall's other jury demands were made almost a year after the last pleadings were filed, he failed to make a timely demand for a jury trial under rule 38(b).

Wall next contends that even though he waived his right to jury trial by failing to make a timely demand, the district court should have granted his request under rule 39(b). We reverse a denial of a request for a jury trial made after a failure to make a proper demand only if the trial

judge has abused his discretion in denying the request. *See Mardesich v. Marciel,* 538 F.2d 848 (9th Cir.1976); *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 675 (9th Cir.1975). The record does not demonstrate any reason, other than counsel's inadvertence, for the failure to comply with rule 38(b). The district judge did not abuse his discretion. *Lewis v. Time Inc.,* 710 F.2d 549, 556–557 (9th Cir.1983).

AFFIRMED.